# MINER v. INDUSTRIAL COMMISSION et al.

No. 7104.   Decided February 4, 1949.   (202 P. 2d 557.)

See 71 C. J., Workmen's Compensation Acts, sec. 1108; 58 Am. Jur. 716. Right to compensation for abnormal condition incident to specific injury, note, 156 A. L. R. 1344.

*Martin M. Larson,* of Salt Lake City, for plaintiff.

*F. A. Trottier,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for defendants.

LATIMER, Justice.

Certiorari to the Industrial Commission to review a decision denying applicant an award for medical expenses incurred in the treatment of a physical injury allegedly caused by an accident in the course of applicant's employment.

On July 9, 1946, applicant was employed as a meat cutter by the Utah Ice & Storage Company. About 11:00 a. m. on that date, while moving a box of meat, he claims to have slipped back, caught his heel and fallen backwards onto another box. The box he was carrying weighed approximately 163 pounds and when he slipped down, he claims his male organ was crushed between the box upon which he fell and the box he was carrying. He made no immediate report, but some time that afternoon, applicant claims to have reported the incident to the superintendent. He also claims that while he stayed on the job and lost no time,

other employees did the lifting for him. The accident did not break the flesh and applicant testified he treated himself by soaking the injured member in hot water. The injury caused him some pain and discomfort for about ten days to two weeks and then it quit bothering him. After the first two week period, the injury did not distress him but a disease, which brought about disability, caused him to worry. The applicant did not consult a doctor until some ten weeks after the date of the claimed injury, and then when he did, he did not include the accident as part of the history which he first related to the doctor. Rather, he requested an opinion from the doctor as to whether his trouble could be caused by tuberculosis or cancer. The first report of the accident to be submitted to the Industrial Commission was received by it December 26, 1946, and the first communication the commission received from applicant was a letter from him dated January 25, 1947.

The only medical testimony in the record is that given by Dr. Robert G. Weaver, urologist, who examined the applicant some ten weeks after the accident. He testified that his diagnosis of applicant's condition at that time was a fibrous induration of the penis, or Peyronie's Disease; that this disease usually occurs in men past 30 years of age, mostly in those of middle age; that the origin or etiology of the disease is unknown; that in some cases it can be traced to traumatic origin, but he could not attribute applicant's condition to such an origin; that Peyronie's Disease is a slow-developing process which can develop in from six months to one year; and that in his opinion applicant's condition would not have reached its stage of development in the ten weeks time.

The Commission, after hearings on the merits, rendered a decision denying applicant an award. In its decision after reciting the facts as testified to by the applicant and the doctor, and after having made reference to the fact that applicant's testimony concerning the accident was uncon-

firmed and uncorroborated, made the following conclusion of law:

"From the foregoing testimony, the Industrial Commission finds and concludes that the evidence submitted does not support or justify a finding by the Commission that the applicant suffered an accident or injury as alleged, arising out of or in the course of his employment; that the application for compensation of the applicant should be denied."

At the threshold, we dispose of applicant's contention that the Commission erred when it denied his petition for rehearing. It is not necessary for us, in this instance, to decide to what extent we may review the decision of the Commission on such a petition. The showing made by the applicant in support of his petition was not sufficient to compel a holding by this court that, as a matter of law, applicant was entitled to relitigate his claim before the Commission.

We do, however, point out that in this case the applicant was not represented by counsel at the hearings. He was not familiar with the rules of the Commission and apparently was not equipped or prepared to cope with the situation that confronted him when the medical evidence was not favorable. Under these circumstances, before the matter was taken under advisement, it would have been well for the Commission to have outlined the issues to the applicant and afforded him an opportunity to furnish such additional evidence as might be available to him. From our experience in a number of recent cases, we are convinced that applicants would fare better in contested cases if they were timely informed by the Commission that while it was not necessary for them to employ counsel, such assistance in the presentation of their case might be desirable. Once a decision has been rendered against an applicant on an issue of fact, his right to a rehearing for the production of further evidence is within the discretion of the Commission. Ordinarily the Commission does not abuse its discretion when it refuses to open up a case for the tak-

ing of further evidence, particularly when the tendered evidence would not compel a contrary finding.

Applicant principally relies for reversal on the ground that evidence conclusively establishes an accident and resulting disability. Approaching this problem from our right to review, we examine the evidence for the purpose of determining whether the Commission acted arbitrarily or unreasonably in denying compensation.

The Commission, in its conclusion, found that the evidence submitted did not justify a finding that the applicant suffered an accident or injury as alleged. Such a conclusion necessarily breaks down into two separate parts. That is: (1) that applicant did not suffer an accident as alleged; and (2) that there was no causal connection between the accident and injury as claimed. We do not commend such a finding, as it is impossible for us to determine the true reason why the claim was denied. It is not necessary that the Commission make findings of fact or conclusions of law, but in many instances, it is very helpful, to this court. In this particular situation, we would encounter little difficulty in disposing of the issues if we were certain as to whether the Commission placed its denial on the first ground, on the second ground, or on both grounds.

While the finding as made by the Commission does not, with certainty, enlighten us as to the reason why the Commission denied the award, we eliminate discussion of the first question as we are satisfied that the evidence produced by applicant permitted a finding by the Commission that the disability was not caused by the accident. So long as the evidence is not sufficient to command a holding that there is a causal connection between the injury and the accident, the finding of the Commission on the happening of an accident—even assuming it to be arbitrary—would not require a reversal.

There is evidence in the record from which the Commission could reasonably conclude that the functional failure of the organ, of which the applicant now complains, was not occasioned by the pinching between the two boxes. Applicant testified that after the accident the member pained for some ten days and then stopped. He apparently paid little, if any, attention to the injury and none to the disability until he noticed the organ was failing to erect in a normal manner. Whether this failure started before or after the fall is not disclosed by the testimony. Even when the disability became readily apparent to applicant, he failed to connect it up with any previous accident. When he consulted a doctor some ten weeks after the purported injury, he was worried for fear his condition was brought about by cancer or tuberculosis. In applicant's mind, there was no thought that his disability was brought about by the injury suffered in the fall. At least until he started taking treatments from a doctor, applicant must have believed he was suffering from a disease rather than from an injury. His statements, lack of action and conduct over the ten weeks period have a tendancy to negative a finding that the accident caused the disability.

Of course, applicant's frame of mind, his action and conduct, or his belief, would not prevent a recovery if other evidence established a causal connection between the accident and the injury. Disregarding the medical evidence for the moment, the missing element in applicant's testimony is that he fails to establish any continuity of effect. According to him, there was no immediate disability; pain and suffering were of short duration, for at least two months no action was taken and no advice sought and finally when medical attention was deemed necessary, it was not because of discomfort, pain, or brusing of the organ, it was because of worry over failure to function. In view of the nature of the disability, the chain of events is not completed by applicant's testimony. We can-

not, from appellant's evidence, conclude that it is sufficient to compel the Commission to find causation.

The medical evidence produced by applicant, rather than showing a causal connection, shows that in the opinion of the doctor, applicant's disability flows from sources other than the accident. Admittedly, the doctor expressed an opinion that Pyronie's disease could, in some cases, be traced to traumatic origin. But he further testified that in this case, he was doubtful of any such origin because applicant's stage of development indicated that he had been subjected to the disease for a period of time longer than the ten weeks intervening between the date of the accident and the diagnosis. We glean from the doctor's testimony that applicant was suffering from a disease which is not uncommon in middle aged men and that the disease is a progressive degenerative process which requires from six months to one year to develop.

In the light of this testimony, the Commission could reasonably find that the accident did not cause the disease. The Commission need not ignore the expert testimony of the doctor and speculate that causation necessarily flows from accident to disability. The testimony of the medical expert is not disputed and the record permits a finding by the Commission in accordance with his testimony. Moreover, the Commission could reasonably infer from the doctor's testimony that applicant's disability arose from causes other than the claimed accident.

The award is affirmed.

PRATT, C. J., and WADE, WOLFE, and McDONOUGH, JJ., concur.